

COPY

1  JEFF S. WESTERMAN (SBN 94559)
   jwesterman@milberg.com
2  MICHIYO MICHELLE FURUKAWA (SBN 234121)
   mfurukawa@milberg.com
3  **MILBERG LLP**
   One California Plaza
4  300 S. Grand Avenue, Suite 3900
   Los Angeles, CA 90071
5  Telephone: (213) 617-1200
   Facsimile: (213) 617-1975
6
   ARTHUR N. BAILEY
7  artlaw@alltel.net
   **ARTHUR N. BAILEY & ASSOCIATES**
8  111 West Second Street, Suite 4500
   Jamestown, NY 14701
9  Telephone: (716) 654-2967
   Facsimile: (716) 664-2983
10
   *Counsel for Plaintiff Chautauqua Pools, Inc.*
11

12              UNITED STATES DISTRICT COURT

13             CENTRAL DISTRICT OF CALIFORNIA

14                    WESTERN DIVISION

15  CHAUTAUQUA POOLS, INC., on        Case No.  SACV12 0198 AG (JPPx)
    behalf of itself and all others similarly
16  situated,                         CLASS ACTION COMPLAINT

17                    Plaintiff,
            vs.
18                                    **JURY TRIAL REQUESTED**
    POOL CORPORATION, SCP
19  DISTRIBUTORS LLC, and SUPERIOR
    POOL PRODUCTS LLC,
20

21                    Defendants.

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NATURE OF CLAIM ...............................................................................1

JURISDICTION AND VENUE ................................................................2

PARTIES...................................................................................................2

INTERSTATE TRADE AND COMMERCE ...........................................3

RELEVANT MARKET ............................................................................3

FACTUAL BACKGROUND ....................................................................5

    I.     The Pool Product Distribution Market .....................................5

    II.    PoolCorp's Monopoly in the Pool Product Distribution Market .........6

    III.   PoolCorp's Exclusionary Practices ...........................................7

         A.    PoolCorp Engaged in an Aggressive Acquisition Strategy to Purchase Competitors and Obtain Unlawful Monopoly Power.....................................................................................7

         B.    PoolCorp Threatened Manufacturers Who Wish to Sell Pool Products to Competitors ...................................................10

    IV.   PoolCorp's Anticompetitive Conduct Has Recently Been the Subject of A Federal Trade Commission Consent Decree.................11

ANTICOMPETITIVE EFFECTS OF POOLCORP'S CONDUCT.......................13

DAMAGES SUFFERED BY PLAINTIFF AND OTHER CLASS MEMBERS ...............................................................................................14

CLASS ACTION ALLEGATIONS ........................................................15

FRAUDULENT CONCEALMENT.......................................................17

CLAIMS FOR RELIEF...........................................................................18

COUNT I Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2................................................................................................18

COUNT II Attempted Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.........................................................................19

PRAYER FOR RELIEF...........................................................................19

JURY DEMAND ....................................................................................20

Plaintiff, Chautauqua Pools, Inc., ("Chautauqua") on behalf of a Class of all others similarly situated, brings this action against defendants Pool Corporation ("PoolCorp"), Superior Pool Products LLC ("Superior") and SCP Distributors LLC ("SCP").   This Complaint is based on information and belief, counsel's investigation, and on the complaint and proposed Consent Order issued by the Federal Trade Commission ("FTC").   Plaintiff alleges as follows:

## NATURE OF CLAIM

1.     This lawsuit arises out of PoolCorp's long-standing, unlawful monopolization of the market for the distribution of residential and commercial swimming pool products (the "Pool Products Distribution Market") in the United States. (All references herein to "PoolCorp" or "Defendants" include PoolCorp and its wholly owned subsidiaries SCP and Superior).

2.     According to PoolCorp's SEC form 10K for the year ended December 31, 2010, it is "the world's largest wholesale distributor of swimming pool supplies, equipment and related leisure products," and "the largest wholesale distributor of swimming pool and related backyard products and the only truly national wholesale distributor focused on the swimming pool industry in the United States."   PoolCorp sells its products to roughly 80,000 customers, a majority of which are small, family-owned businesses with relatively limited capital resources.

3.     Approximately 70% of consumer spending in the pool industry is for maintenance and minor repair of existing swimming pools; 20% is spent on replacing and refurbishing existing pools; and 10% is spent on constructing new pools.

4.     PoolCorp has engaged in unlawful exclusionary acts and anticompetitive practices to acquire and maintain its monopoly power in the Pool Products Distribution Market. Specifically, PoolCorp has unlawfully (1) intimidated manufacturers; (2) threatened to refuse to deal with any manufacturer

1    that sells its Pool Products (defined below) to new distributors entering the market;
2    and (3) acquired competitors and thereafter shut down their businesses.

3           5.      These tactics foreclosed and continue to foreclose competitors from
4    obtaining the Pool Products necessary to compete in the Pool Products Distribution
5    Market. They also deter and impede new entrants, raise competitors' costs, and
6    result in higher prices, reduced output and less consumer choice for Pool Products.

7           6.      Based on this anticompetitive conduct, the FTC began an
8    investigation of PoolCorp's unlawful practices, which culminated in a recent
9    proposed Consent Order under which the company agreed to refrain from engaging
10   in certain anticompetitive tactics.

11                           **JURISDICTION AND VENUE**

12          7.      The claims set forth in this Complaint arise under Section 2 of the
13   Sherman Act, 15 U.S.C. § 2. Plaintiff seeks treble damages pursuant to Section 4
14   of the Clayton Act, 15 U.S.C. § 15(a).

15          8.      This Court has jurisdiction pursuant to Sections 4 and 12 of the
16   Clayton Act, 15 U.S.C. §§ 15(a) and 22, and pursuant to 28 U.S.C. §§ 1331 and
17   1337.

18          9.      Venue is proper in this District pursuant to Sections 4 and 12 of the
19   Clayton Act (15 U.S.C. §§ 15(a) and 22) and 28 U.S.C. § 1391(b) and (c) in that
20   Defendants are located in, licensed to do business in and/or do business in this
21   District; the three largest "must have" manufacturers of Pool Products are located
22   in and/or do business in this District; and a substantial part of the events or
23   occurrences giving rise to the claims alleged occurred in this District.

24                                  **PARTIES**

25          10.     Plaintiff Chautauqua Pools, Inc., is a New York corporation with its
26   principal place of business in Jamestown, New York. During the Class Period
27   Chautauqua purchased Pool Products from PoolCorp at artificially inflated prices.

28

11.    Defendant Pool Corporation is a Delaware corporation with its principal place of business in Covington, Louisiana.

12.    Defendant SCP Distributors LLC, formerly known as South Central Pools, is a Delaware corporation with its principal place of business in Covington, Louisiana.

13.    Defendant Superior Pool Products LLC is a Delaware corporation with its principal place of business in Anaheim, California.

14.    SCP is a wholly owned subsidiary of PoolCorp, and Superior is a wholly owned subsidiary of SCP.

15.    PoolCorp distributes Pool Products through the distribution networks of its two wholly owned subsidiaries, SCP and Superior. Both distribution networks operate throughout the United States and distribute similar product lines.

## INTERSTATE TRADE AND COMMERCE

16.    Throughout the Class Period, PoolCorp manufactured, produced, sold and/or shipped substantial quantities of Pool Products in a continuous and uninterrupted flow of transactions in interstate commerce throughout the United States, including within this District. PoolCorp's unlawful activities that are the subject of this Complaint were within the flow of, and have had a direct and substantial effect on, interstate trade and commerce.

## RELEVANT MARKET

17.    There are over nine million residential pools in the United States, and over 250,000 commercial pools operated by hotels, country clubs, apartment buildings, municipalities, and others. In 2010, the distribution of Pool Products was an estimated $3 billion industry in the United States.

18.    The relevant product market is the Pool Products Distribution Market. "Pool Products" are the equipment, products, parts or materials used for the construction, renovation, maintenance, repair or service of residential and commercial swimming pools. Pool Products include, among others, pumps, filters,

- 3 -

heaters, covers, cleaners, steps, rails, diving boards, pool liners, pool walls, and "white goods" or parts necessary to maintain pool equipment. Pool Products do not include pool toys or games, or products used solely for landscaping or irrigation, Olympic-style pools, or pools used in commercial water parks.

19. Pool Products are designed and manufactured specifically for residential and commercial swimming pools. There are no close substitutes for Pool Products, and no other products significantly constrain their pricing.

20. Pool distributors purchase Pool Products from manufacturers, warehouse them, and then resell those products to pool builders, pool retail stores and pool service and repair companies (collectively, "Pool Dealers" or "Dealers"). Pool Dealers then sell the Pool Products to the ultimate consumer: owners of residential and commercial pools.

21. Pool Products manufacturers consider wholesale distributors to be a unique and essential channel for the efficient distribution of their products. Distributors purchase and warehouse significant volumes of Pool Products throughout the year, allowing manufacturers to operate their factories year-round notwithstanding the seasonal nature of the pool industry. Distributors also provide one-stop shopping, timely delivery and the extension of credit to thousands of Dealers, thereby providing Dealers and manufacturers with significant transactional efficiencies. Additionally, distributors often help Pool Products manufacturers administer their Dealer rebate and warranty programs, and provide expertise to answer Dealers' product-related questions.

22. While Pool Products manufacturers make some direct sales to larger Dealers, they cannot easily expand their operations into distribution because of the costs, their lack of expertise in distribution, and the difficulty of obtaining products to distribute from competing manufacturers. Distributors are the only available source of Pool Products for the vast majority of Dealers, which are small mom-and-pop operations that do not have the inventory size or resources to purchase

Pool Products directly from manufacturers. Dealers that buy directly from manufacturers are not permitted by the manufacturers to participate more broadly in the wholesale distribution market and sell Pool Products to other Dealers.

23.    The relevant geographic market is the Pool Products Distribution Market in the United States.

## FACTUAL BACKGROUND

**I.    The Pool Product Distribution Market**

24.    The manufacture of Pool Products is generally very fragmented. There are over 100 manufacturers that produce a small number of product lines, such as pool heaters or diving boards and rails. However, there are only three manufacturers that each sell nearly all of the Pool Products necessary to operate and maintain a pool: Pentair Water Pool and Spa, Inc. ("Pentair") located in Moorpark, California; Hayward Pool Products, Inc. ("Hayward") located in Pomona, California; and Zodiac Pool Systems, Inc. ("Zodiac") located in Vista, California. Collectively, these three full-line Pool Products manufacturers represent more than 50 percent of sales at the wholesale level.

25.    Distributors generally carry all brands of Pool Products across all manufacturers to satisfy any and all orders from their Dealer customers. It is necessary to sell the products of at least one of the three full-line manufacturers to be able to compete effectively as a distributor. The products of the full-line manufacturers are "must have" products for wholesale distributors because of the volume of products they represent and the considerable consumer demand for their products. A positive relationship with these and other manufacturers is critical to the success of a Pool Products distributor.

26.    In general, Pool Products manufacturers are willing to sell their products through any credit-worthy distributor that has a physical warehouse and personnel with knowledge of the pool industry.  Manufacturers typically prefer to

1  have two or more distributors selling their products to ensure that their Dealer
2  customers receive competitive service and prices.

3      27.    Manufacturers market their Pool Products directly to Dealers in order
4  to create pull-through demand at the distribution level, and also offer year-end
5  rebates to distributors based on the volume of a distributor's purchases. These
6  year-end rebates represent a significant component of the ultimate price paid by
7  distributors for Pool Products. Failure to qualify for these rebates can have a
8  significant detrimental impact on a distributor's ability to compete on price.

9  **II.    PoolCorp's Monopoly in the Pool Product Distribution Market**

10     28.    PoolCorp is the world's largest distributor of Pool Products, and
11 operates approximately half of all pool distribution facilities in the United States.
12 Unlike other distributors that operate in a few local markets or a specific region,
13 PoolCorp is the only U.S. distributor to operate nationwide.

14     29.    According to an October 25, 2011 research report issued by Zacks
15 Investment Research, PoolCorp is the only true national wholesale distributor
16 focused on the swimming pool industry in the United States.

17     30.    PoolCorp purchases Pool Products from manufacturers, warehouses
18 them, and then resells those products to Dealers.  Pool Dealers then sell the Pool
19 Products to the ultimate consumer: owners of residential and commercial pools.

20     31.    According to the Zacks Investment Research report, PoolCorp has a
21 "dominant position with respect to the market share" in the Pool Product
22 Distribution Market. The company capitalizes on the highly fragmented nature of
23 its industry and it is able to secure products from the vendors at better terms than
24 its customers would be able to achieve on their own.

25     32.    Through a series of acquisitions, PoolCorp has grown to operate over
26 200 distribution centers throughout the United States.  By way of comparison, the
27 next largest U.S. Pool Products distributor operates less than 40 centers.  In 2010,
28 PoolCorp had roughly $1.5 billion in net sales.

33.   PoolCorp's exclusionary acts and anticompetitive practices has enabled it to monopolize the Pool Products Distribution Market in the United States.

34.   According to PoolCorp's 2010 SEC Form 10K, the company's "primary markets, which have the highest concentration of swimming pools are California, Florida, Texas and Arizona, representing approximately 50% of our net sales in 2010."

35.   PoolCorp's exclusionary acts and anticompetitive practices of foreclosing new entrants from obtaining Pool Products directly from manufacturers, which is a necessary input to compete, represents a significant barrier to entering the Pool Products Distribution Market.

**III.   PoolCorp's Exclusionary Practices**

36.   Beginning as early as 2003, PoolCorp has engaged in anticompetitive conduct by foreclosing access to essential inputs and impeding market entry by potential new entrants. PoolCorp's conduct is intended to and effectively does enable it to improperly maintain and enhance its monopoly power in the Pool Products Distribution Market. PoolCorp's conduct has caused injury to competition and to consumers.

37.   According to the FTC complaint filed on November 21, 2011 (the "FTC Complaint"), PoolCorp's conduct of foreclosing new distributor entrants from obtaining Pool Products directly from Pool Products manufacturers represents a significant barrier to entry in the Pool Products Distribution Market.

**A.   PoolCorp Engaged in an Aggressive Acquisition Strategy to Purchase Competitors and Obtain Unlawful Monopoly Power**

38.   PoolCorp achieved its monopoly, in part, by aggressively targeting and acquiring competitors in order to expand its market share in the Pool Products Distribution Market.  Since 1995, PoolCorp has acquired at least 12 competitors:

- In December 1995, PoolCorp acquired Allied Pool & Spa. a leading distributor of Pool Products in Nevada and Arizona.
- In July 1996, PoolCorp acquired 39 service centers from Great Lakes Chemical Corp's Biolab Inc. unit, a Pool Products distributor. At the time of the acquisition, PoolCorp stated that "the transaction will expand its geographic presence, particularly in Florida, California and Arizona."
- In November 1997, PoolCorp acquired the assets of Bicknell Huston Distributors, Inc., a distributor of Pool Products through eleven service centers in six states in the Northeast.
- In February 1998, PoolCorp acquired certain assets of Valve Engineering Acquisition company, a privately-owned distributor of Pool Products located in Glendale, California. At the time of the acquisition, the Chairman of PoolCorp stated that "this transaction offered the opportunity to increase our market penetration in the greater Los Angeles area."
- In January 1999, PoolCorp acquired substantially all of the assets of Benson Pump Company, a privately-owned Pool Products supplier with 20 service centers in 14 states.
- In August 2000, PoolCorp acquired substantially all of the assets of Superior Pool Products, Inc., a distributor of Pool Products with a network of 19 service centers in California, Arizona and Nevada. At the time of this acquisition, the President of PoolCorp touted the company's aggressive acquisition strategy, "this transaction extends our established strategy of complementing the company's ongoing internal growth through the purchase of additional service centers."

- In January 2001, PoolCorp acquired substantially all of the assets of Hughes Supply, Inc., a Pool Products company with 31 service centers in the eastern half of the United States.
- In August 2002, PoolCorp acquired Fort Wayne Pools, Inc. ("FWP"), a large regional Pool Products distributor with 22 service centers across 16 states. According to the FTC Complaint, "FWP was PoolCorp's then-largest, and sometimes only, competitor."
- In September 2003, PoolCorp acquired substantially all of the assets of Litehouse Products, Inc.'s distribution division.   Litehouse's primary business was the retail sales of swimming pool and other leisure products through 27 stores in Ohio, Pennsylvania and Michigan.
- In November 2005, PoolCorp announced the acquisition of the assets of Direct Replacements, Inc., a Marietta, Georgia packaged pool distributor.
- In March 2008, PoolCorp acquired National Pool Tile Group, Inc., a wholesale distributor of pool tile and composite pool finishes.
- On October 7, 2009, PoolCorp announced the acquisition of California pool and spa products distributor, General Pool & Spa Supply, Inc.

39.     Consistent with PoolCorp's routine exclusionary business practices, it aggressively targets and eliminates any competitors it sees as a competitive threat. For example, soon after acquiring FWP, PoolCorp closed the FWP distribution facility in Baton Rouge.  This left PoolCorp as the only remaining distributor in the area, thereby enabling it to impose a five percent price increase.

CLASS ACTION COMPLAINT

**B.     PoolCorp Threatened Manufacturers Who Wish to Sell Pool Products to Competitors**

40.     According to the FTC Complaint, when a new distributor attempted to enter the Pool Products Distribution Market, PoolCorp threatened manufacturers that it would not deal with them if they also supplied the new entrant. PoolCorp threatened to terminate the purchase and sale of the manufacturers' Pool Products for all 200+ PoolCorp distribution centers located throughout the United States.

41.     In the Spring of 2003, a former Dealer with almost 20 years of experience in the Pool Products industry opened a distribution business in Baton Rouge, Louisiana to compete with PoolCorp. PoolCorp responded to this new competition by notifying all major Pool Products manufacturers that it would stop dealing with any manufacturer that sold any of its products to the new entrant. PoolCorp threatened not only to terminate its purchases and sales in the local Baton Rouge area, but across the *entire country*.

42.     As the manufacturers' largest customer, PoolCorp's threat was significant.  No other distributor could replace the large volume of potential lost sales to PoolCorp, particularly in those markets where PoolCorp remains the only distributor.  In fact, according to the complaint issued by the FTC, the manufacturer's loss of sales to PoolCorp could be "catastrophic" to the financial viability of even major manufacturers of Pool Products.

43.     Without expending tens of millions of dollars to enter dozens of markets simultaneously, it is impossible for new entrants to offer any economic incentives to manufacturers that would offset the risks imposed by PoolCorp's threats.

44.     As a result of PoolCorp's threats and demands, Pool Products manufacturers, including the three "must have" manufacturers, Pentair, Hayward, and Zodiac, refused to sell Pool Products to the new entrant and canceled any pre-existing orders.  PoolCorp effectively foreclosed the new entrant from obtaining

1  Pool Products from manufacturers that represented more than 70 percent of all
2  Pool Products sales.

3      45.    Without direct access to the manufacturers of Pool Products, the new
4  entrant's business ultimately failed in 2005.

5      46.    A new entrant cannot avoid the effects of PoolCorp's anticompetitive
6  conduct by purchasing Pool Products from other distributors. As a general rule,
7  distributors do not sell Pool Products to other distributors. Even when possible, this
8  alternative is not a viable long-term strategy because it substantially increases a
9  distributor's costs and lessens its quality of service.

10      47.    For example, if a new entrant distributor purchases from another
11 distributor, the entrant distributor is forced to pay transportation costs from that
12 distributor's location, rather than receiving free shipping under manufacturer
13 programs.  The purchases are also at a marked-up price and do not qualify for key
14 manufacturer year-end rebates.  These higher costs would prevent the new entrant
15 from being able to compete aggressively on price. Additionally, without full
16 control of its inventory, this attempted work-around hampers the new entrant's
17 ability to provide timely and quality service to its Dealer customers.

18      48.    Because of PoolCorp's illegally obtained monopoly power and
19 exclusionary conduct, Pool Products manufacturers had two choices:  (1)
20 permanently lose PoolCorp, their largest customer, or (2) accede to PoolCorp's
21 threats and demands and refuse to sell Pool Products to smaller, less powerful
22 distributors.  As the FTC Complaint alleges, they chose the latter.

23 **IV.  PoolCorp's Anticompetitive Conduct Has Recently Been the Subject of
24 A Federal Trade Commission Consent Decree**

25      49.    On November 21, 2011, the FTC issued a complaint and a proposed
26 Consent Order ("Consent Order") against PoolCorp for violation of Section 5 of
27 the Federal Trade Commission Act, 15 U.S.C. § 45.  *See In the Matter of Pool
28 Corporation*, FTC File No. 101 0115.

CLASS ACTION COMPLAINT

50.  The FTC Complaint states:

This action addresses PoolCorp's exclusionary acts and practices in the market for the distribution of residential and commercial swimming pool products. PoolCorp has unlawfully maintained its monopoly power by threatening to refuse to deal with any manufacturer that sells its pool products to a new distributor entering the market, thereby foreclosing potential rivals from an input necessary to compete.  PoolCorp's conduct deters and impedes entry, raises its rivals' costs, and results in higher prices, reduced output and less consumer choice.

51.  In the FTC's Analysis to Aid Public Comment *In the Matter of Pool Corporation*, it discusses the FTC Complaint's allegations that:

Beginning in 2003 and continuing to today, PoolCorp has implemented an exclusionary policy that effectively impeded entry by new distributors by preventing them from being able to purchase pool products directly from manufacturers.  Specifically, when a new distributor attempted to enter a local geographic market, PoolCorp threatened manufacturers that it would not deal with them if they also supplied the new entrant. PoolCorp threatened to terminate the purchase and sale of the manufacturer's [P]ool [P]roducts for all 200+ PoolCorp distribution centers located throughout the United States.

52.  As part of the Consent Order PoolCorp agrees to cease and desist from certain exclusionary acts and anticompetitive practices, including: (a) conditioning the sale or purchase of Pool Products, or membership in PoolCorp's preferred vendor programs, on the intended or actual sale of Pool Products by a manufacturer to any distributor other than PoolCorp; (b) pressuring, urging or otherwise coercing manufacturers to refrain from selling, or to limit their sales to any distributors other than PoolCorp; and (c) discriminating or retaliating against a

- 12 -

1  manufacturer for selling, or intending to sell, Pool Products to any distributor other
2  than PoolCorp.

3      53.    Under the Consent Order, PoolCorp is required to implement an
4  antitrust compliance program and is subjected to other antitrust compliance
5  requirements. The Order will last for 20 years.

6  **ANTICOMPETITIVE EFFECTS OF POOLCORP'S CONDUCT**

7      54.    The effects of PoolCorp's anticompetitive and exclusionary acts have
8  been to capture and/or maintain a large percentage of the relevant market, to
9  substantially impair and foreclose competition from rivals from a substantial share
10 of the relevant market, and to significantly raise barriers to entry for potential
11 rivals.

12     55.    The acts and practices of PoolCorp as alleged herein have had the
13 purpose, tendency, and effect of impairing the competitive effectiveness of rivals,
14 raising its rivals' costs, and deterring and impeding market entry. PoolCorp's
15 unlawful conduct has contributed significantly to the enhancement and
16 maintenance of its monopoly power.

17     56.    PoolCorp's conduct adversely affected competition and consumers
18 by: (a) increasing or maintaining premium prices for Pool Products at artificially
19 high levels; (b) reducing the output of Pool Products; (c) eliminating or
20 significantly reducing price competition for Pool Products; (d) deterring, delaying
21 and impeding the ability of actual or potential competitors to enter or to expand
22 their sales in the Pool Products Distribution Market; and (e) reducing consumer
23 choice among competing Pool Products distributors.

24     57.    There are no legitimate pro-competitive efficiencies that justify
25 PoolCorp's conduct or outweigh its substantial anticompetitive effects.

26     58.    Absent PoolCorp's anticompetitive conduct and the substantial
27 foreclosure and reduction of effective competition caused by such conduct,

28

1    PoolCorp would have faced competition and reduced the prices it charged to
2    purchasers of Pool Products.

3        59.    Moreover, had actual or potential Pool Products distributors not been
4    prevented by PoolCorp's anticompetitive conduct from effectively competing in
5    the market for such products, those actual or potential competitors would have sold
6    more Pool Products, gained a larger market share, and achieved economies of scale
7    and scope that could have further driven down prices for Pool Products in the
8    marketplace.

9        60.    By unlawfully excluding and impairing competition, PoolCorp's
10   conduct has caused Plaintiff and other Class members to pay more for Pool
11   Products than they otherwise would have paid absent PoolCorp's illegal,
12   exclusionary conduct.

13       61.    As a result of PoolCorp's unlawful, anticompetitive conduct, Plaintiff
14   and members of the Class were compelled to pay, and did pay, artificially inflated
15   prices for the Pool Products they purchased.

16   **DAMAGES SUFFERED BY PLAINTIFF AND OTHER CLASS MEMBERS**

17       62.    PoolCorp's illegal exclusionary acts and practices thwart entry by new
18   competitors by blocking them from buying Pool Products directly from Pool
19   Products manufacturers.  This strategy significantly raised the costs incurred by
20   Pool Corp's rivals, thereby lowering sales, increasing prices, and reducing the
21   number of choices available to Plaintiff and other members of the Class.

22       63.    As a result of PoolCorp's illegal tactics, Plaintiff and other Class
23   members paid more for Pool Products than they would have otherwise paid.

24       64.    Plaintiff and Class members suffered losses and damages as a result of
25   PoolCorp's illegal tactics.  The amount of such damages are not known at this
26   time.

27
28

## CLASS ACTION ALLEGATIONS

65.     Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on its own behalf and as a representative of the following class of persons and entities (the "Class"):

> All persons or entities that purchased Pool Products directly from any Defendant at any time between January 1, 2003 and the present (the "Class Period"). Excluded from the Class are Defendants and their subsidiaries, parents, or affiliates, whether or not named as a Defendant in this Complaint, and government entities.

66.     The Class is individually so numerous that joinder of all members is impracticable. While the exact number of members of the Class is unknown to Plaintiff at this time, based on the nature of the trade and commerce involved, Plaintiff reasonably believes that there are at least hundreds of members in the Class and that their identities can be learned from records in PoolCorp's possession, custody or control. Class members are geographically dispersed throughout the United States.

67.     Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the members of the Class have all sustained damage in that, during the Class Period, they purchased Pool Products directly from PoolCorp at artificially high prices, resulting from PoolCorp's actions in connection with the anticompetitive behavior alleged herein. PoolCorp's anticompetitive conduct, the effects of such violations, and the relief sought are all issues or questions that are common to Plaintiff and the other Class members.

68.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and antitrust litigation.

69.     Plaintiff's interests are coincident with, and not antagonistic to, the interests of the other Class members.

70.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.

71.     The common questions of law and fact common to the Class include, but are not limited to:

(a)     whether the Pool Products Distribution Market in the United States is the relevant market in this case;

(b)     whether PoolCorp possesses monopoly power in the Pool Products Distribution Market;

(c)     whether, through the conduct alleged herein, PoolCorp willfully acquired or maintained or enhanced its monopoly power in the Pool Products Distribution Market;

(d)     whether, through the conduct alleged herein, PoolCorp attempted to monopolize the Pool Products Distribution Market;

(e)     whether PoolCorp monopolized the relevant Pool Products market by engaging in unlawful exclusionary acts and practices to acquire or maintain or enhance its monopoly power in the Pool Products Distribution Market;

(f)     whether PoolCorp entered into exclusionary agreements to unlawfully acquire or maintain or enhance its monopoly power in the Pool Products Distribution Market;

(g)     whether, and to what extent, PoolCorp's conduct caused Plaintiff and Class members to pay supra-competitive prices for Pool Products and, thereby, suffer antitrust injuries; and

(h)     whether Plaintiff and Class members are entitled to damages and, if so, the appropriate measure of damages.

72.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable.  The prosecution of separate actions by individual members

of the Class would impose heavy burdens upon the courts and the Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness. There will be no material difficulty in the management of this action as a class action on behalf of the Class.

## FRAUDULENT CONCEALMENT

73. Plaintiff and other members of the Class had no knowledge of Defendants' unlawful self-concealing conduct or of any facts which could have led to the discovery thereof in the exercise of reasonable diligence until November 2011. Plaintiff and Class members could not have discovered the alleged monopolization and/or attempted monopolization at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants to avoid detection thereof, and to fraudulently conceal, their unlawful anticompetitive conduct.

74. Because the alleged monopolization and/or attempted monopolization were kept secret by Defendants, Plaintiff and other members of the Class were unaware that they were paying supra-competitive prices for Pool Products until November 2011, when the FTC investigation and related Consent Order were first made public.

75. Pool Products are not exempt from antitrust regulation, and thus, before November 2011, Plaintiff and other members of the Class reasonably considered the Pool Products Distribution Market to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been put on notice to investigate the lawfulness or legitimacy of PoolCorp's Pool Products prices before November 2011.

76.     As a result of Defendants' fraudulent concealment, the applicable statute of limitations governing Plaintiff's right of action has been tolled and did not begin to run until November 2011.

## CLAIMS FOR RELIEF

### COUNT I
**Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2**

77.     Plaintiff incorporates by reference the preceding allegations.

78.     PoolCorp acquired, willfully maintained and unlawfully exercised monopoly power in the relevant market through the exclusionary, anticompetitive conduct set forth above, including, but not limited to: (a) entering into exclusive arrangements with Pool Products manufacturers that prevent those manufacturers from selling their Pool Products to any distributor other than PoolCorp; (b) refusing to deal with Pool Products manufacturers that sold Pool Products to any Pool Products distributors other than PoolCorp; and (c) retaliating against Pool Products manufacturers for selling Pool Products to any Pool Products distributor other than PoolCorp.

79.     Beginning in at least 2003, PoolCorp implemented an exclusionary policy that effectively impeded new entrants in the Pool Products market, reduced and restrained competition, unlawfully acquired and expanded its dominant market share in the Pool Products market, and profited from its illegally-obtained monopoly power.

80.     There is no legitimate business justification for PoolCorp's anticompetitive actions and the conduct through which it acquired and maintained its monopoly power in the Pool Products market.

81.     The anticompetitive effects of PoolCorp conduct far outweigh any conceivable pro-competitive benefit or justification.

82.     As a direct and proximate result of PoolCorp's anticompetitive conduct, Plaintiff and members of the Class have been injured in their business or

- 18 -

1  property by PoolCorp's illegal monopolization of the Pool Products market.  As a
2  direct result of PoolCorp's unlawful tactics, Plaintiff and the other members of the
3  Class have been forced to pay artificially high prices for Pool Products than they
4  would have otherwise paid.

5                                   **COUNT II**
   **Attempted Monopolization in Violation of Section 2 of the Sherman Act, 15**
6                                  **U.S.C. § 2**

7        83.    Plaintiff incorporates by reference the preceding allegations.

8        84.    PoolCorp has engaged in unlawful exclusionary conduct with a
9  specific intent to acquire and maintain its monopoly power in the market for Pool
10 Products in the United States.  PoolCorp's anticompetitive conduct outlined above
11 include, but are not limited to: (a) entering into exclusive arrangements with Pool
12 Products manufacturers that prevent those manufacturers from selling their Pool
13 Products to any distributor other than PoolCorp; (b) refusing to deal with Pool
14 Products manufacturers that sold Pool Products to any Pool Products distributors
15 other than PoolCorp; and (c) retaliating against Pool Products manufacturers for
16 selling Pool Products to any Pool Products distributor other than PoolCorp.

17       85.    As set forth above, if it has not already illegally acquired and
18 expanded its monopoly power in the Pool Products Distribution Market,
19 PoolCorp's anticompetitive and exclusionary actions signal a dangerous
20 probability that it would acquire and maintain such monopoly power.

21       86.    As a direct result of PoolCorp's anticompetitive and exclusionary
22 practices, Plaintiff and members of the Class have been injured in their business or
23 property by PoolCorp's attempt to monopolize the relevant market.  Plaintiff and
24 the other members of the Class have been forced to pay artificially high prices for
25 Pool Products than they would have otherwise paid.

26                          **PRAYER FOR RELIEF**

27       Accordingly, Plaintiff respectfully requests the following relief:

28       A.    Certification of the Class proposed in this Complaint;

1       B.     PoolCorp's actions described herein be adjudged and decreed to be in

2 violation of Section 2 of the Sherman Act, 15 U.S.C. § 2;

3       C.     Plaintiff and the Class recover damages, as provided by law, that they

4 are determined to have sustained, and that judgment in favor of Plaintiff and the

5 Class be entered against Defendants;

6       D.     Plaintiff and the Class recover the costs of this suit, including

7 reasonable attorneys' fees, as provided by law; and

8       E.     Plaintiff and the Class be granted such other, further and different

9 relief as the nature of the case may require or as may seem just and proper to this

10 Court.

11 **JURY DEMAND**

12      Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff

13 respectfully demands a trial by jury.

14 DATED:  February 7, 2012           **MILBERG LLP**
JEFF S. WESTERMAN

15                                    MICHELLE FURUKAWA

16

17                                    JEFF S. WESTERMAN

18                                    One California Plaza

19                                    300 S. Grand Avenue, Suite 3900
Los Angeles, CA 90071

20                                    Telephone: (213) 617-1200
Facsimile:  (213) 617-1975

21                                    Email: jwesterman@milberg.com
mfurukawa@milberg.com

22                                    ARTHUR N. BAILEY

23                                    **ARTHUR N. BAILEY & ASSOCIATES**

24                                    111 West Second Street, Suite 4500
Jamestown, NY 14701

25                                    Telephone:  (716) 654-2967
Facsimile:  (716) 664-2983

26                                    Email: artlaw@alltel.net

27                                    *Counsel for Plaintiff Chautauqua Pools, Inc.*

28

- 20 -

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Jean P. Rosenbluth.

The case number on all documents filed with the Court should read as follows:

## SACV12- 198 AG (JPRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ] **Western Division** | [X] **Southern Division** | [ ] **Eastern Division** |
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

COPY

Name & Address:
Jeff S. Westerman (SBN 94559)
Michiyo Michelle Furukawa (234121)
Milberg LLP
300 S. Grand Ave., #3900, Los Angeles, CA 90071
Tel: (213) 617-1200   Fax: (213) 617-1975

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHAUTAUQUA POOLS, INC., on behalf of itself and all others similarly situated,<br><br>PLAINTIFF(S)<br>v.<br>POOL CORPORATION, SCP DISTRIBUTORS LLC, and SUPERIOR POOL PRODUCTS LLC,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>SACV12 0198 AG (JPRx)<br><br><br>**SUMMONS** |

TO:      DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __Michelle Furukawa_____, whose address is __Milberg LLP, 300 S. Grand Ave., #3900, Los Angeles, CA 90071_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __FEB - 7 2012_____

By: _____   **JULIE PRADO**

Deputy Clerk

(Seal of the Court)

*SEAL*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                                    SUMMONS



# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) CHAUTAUQUA POOLS, INC., on behalf of itself and all others similarly situated, | DEFENDANTS POOL CORPORATION, SCP DISTRIBUTORS LLC, and SUPERIOR POOL PRODUCTS LLC, |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) Jeff S. Westerman; Michiyo Michelle Furukawa Milberg LLP, 300 S. Grand Ave., #3900, Los Angeles, CA 90071 Tel: (213) 617-1200  Fax: (213) 617-1975 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES -** For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes   ☐ No   ☒ MONEY DEMANDED IN COMPLAINT: $ TBD

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; Attempted Monopolization in Violation of Section 2 of the Sherman Act, 15 U.S.C. § 2

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☒ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | REAL PROPERTY | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**   Case Number: SACV12 0198

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☒ Yes
If yes, list case number(s): 11-cv-01866; 12-cv-00018

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☒ A. Arise from the same or closely related transactions, happenings, or events; or
   ☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or
   ☒ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | New York |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Superior Pool Products LLC - Orange County | Pool Corporation - Louisiana<br>SCP Distributors LLC - Louisiana |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date February 7, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |